UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LINDELL BOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| CITY OF FERGUSON, | ) |
| | ) |
| PATROLMAN (FNU) DAVIS, | ) |
| | ) |
| PATROLMAN ERIN P. O'BRIEN, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Comes now Plaintiff, Lindell Boyd, for his cause of action against the City of Ferguson, Patrolman (FNU) Davis, and Patrolman Erin P. O'Brien, states:

### STATEMENT OF THE CASE

1. The Ferguson, Missouri Police Department has engaged in systematic violations of the constitutional rights of citizens peacefully residing in or traveling through Ferguson's boundaries. Ferguson police officers have persistently engaged in a pattern of stopping, detaining, confronting, arresting, using excessive force against, assaulting and prosecuting citizens, who were not engaged in illegal conduct. The unlawful conduct of Ferguson police officers was directed and endorsed by the City of Ferguson, and its administrators and supervisors, in large part for the purpose of generating revenue for the City of Ferguson through its Municipal Court. The burden of the pattern of law

1

enforcement activity by the City of Ferguson and its officers fell largely on the African-American community.

2. On December 8, 2011, Plaintiff Lindell Boyd, an African-American man, was the victim of a wrongful stop, detention, tasing, assault and arrest by two City of Ferguson police officers. He was criminally prosecuted in the Municipal Court, despite the fact that he had committed no criminal offense.

**PARTIES**

3. Plaintiff Lindell Boyd is, and at all times material hereto, has been, a resident of St. Louis County, State of Missouri, residing in the City of University City, a municipality located near central St. Louis County. At the time of the incident in question, Plaintiff was 49 years old with no criminal record and was gainfully employed. Plaintiff worked at Lambert--St. Louis International Airport and had a security clearance by virtue of his position with a national airline. He is an African-American male.

4. Defendant City of Ferguson is a municipal corporation, organized and existing pursuant to Missouri law and located in North St. Louis County. Ferguson is sued by virtue of the policies, patterns and practices, and customs and usages described herein.

5. Defendant (FNU) Davis was, at all times material hereto, a sworn peace officer certified by the State of Missouri and was employed as a Patrol Officer by the City of Ferguson. The actions of Defendant Davis were done under color of law. The actions of Defendant Davis were done jointly and in concert with other police officers, including Defendant O'Brien. Defendant Davis is sued in his individual capacity.

6. Defendant Erin P. O'Brien was, at all times material hereto, a sworn peace officer

certified the State of Missouri and was employed as a Patrol Officer by the City of Ferguson. The actions of Defendant O'Brien were done under color of law. The actions of Defendant O'Brien were done jointly and in concert with other police officers, including Defendant Davis. Defendant O'Brien is sued in his individual capacity.

## JURISDICTION AND VENUE

7. This cause is brought pursuant to 42 U.S.C. §1983. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), since the Defendants are located, and all of the incidents giving rise to this suit, occurred in this judicial district.

## FACTS

### The Incident

8. On December 8, 2011 at approximately 10:00 p.m., Plaintiff Lindell Boyd was sitting in his car located at a residence at 1501 Nesbit in the City of Ferguson. Plaintiff was sitting in the car conversing with a friend and resident of 1501 Nesbit, Latavia Sims. Neither Plaintiff nor Sims was doing anything unlawful. Plaintiff's car was idling and the heat was on.

9. Defendant Davis was on duty in a marked police car at that same location and time. Davis, with no probable cause or reasonable suspicion to do so, stopped his car, approached Plaintiff and asked him for identification. The Defendant also asked him what he was doing at that location. Plaintiff and Sims both explained that Sims lived in the house at the Nesbit address, and that they had been inside and were now outside talking. Plaintiff told Davis that he had a right to be at the location, and showed Davis

his work identification badge. Boyd inquired about the purpose of the contact by the officer. Davis became more belligerent and demanding toward Plaintiff, causing Boyd to become apprehensive and concerned about his safety.

10. Defendant O'Brien arrived on the scene. One or both officers commanded Plaintiff to get out of the car and when Plaintiff asked why he was being required to get out, one of the officers told Plaintiff he would be tased if he did not comply.

11. The officers then put their hands on Plaintiff and together, pulled Plaintiff from his car.

12. Over the next several moments, Defendants Davis and O'Brien took turns tasing and striking Plaintiff with their fists. Boyd was struck at least three times with the taser, including at least twice when he was already on the ground. He was then placed in handcuffs and stood up.

13. While standing, with handcuffs on, Plaintiff was struck once in the face and once in the back of the head by O'Brien, using his fists.

14. Plaintiff was taken to the Ferguson Municipal Jail where he was charged by summons with failure to comply.

### Plaintiff's Failure-to-Comply Charge Becomes "Littering"

15. It was the policy and practice of the City of Ferguson Police Department to utilize their arrest and summons powers to generate revenue for the City. Plaintiff's case was filed in the Municipal Court of Ferguson rather than the St. Louis County Circuit Court where serious criminal charges are normally filed. Most professional municipal police departments choose to file any case involving a significant use of force by one of its officers – such as Plaintiff's case – in the St. Louis County Circuit Court where an

objective prosecutor would be required to review the case before it was issued.

16. Because of the serious nature of the charges, Plaintiff retained legal counsel. Plaintiff's attorney sought a recommendation from the prosecutor to determine if the case could be resolved. Pursuant to the policy and practice of using the police department and municipal court system to promote revenue generation rather than public safety, the Municipal Prosecutor amended the Failure-to-Comply case to a municipal charge of "Littering." In exchange for this amendment, however, the City required that Plaintiff pay a fine of $192.00 to resolve the charge.

17. Plaintiff and his attorney had a Hobson's choice. Fighting the case all the way to a jury trial would have likely cost plaintiff $3,000 - $5,000. Plaintiff and his attorney also knew that if he were, by chance, convicted of the charges, he would have a criminal conviction on his record and would face the likelihood of loss of his current job, which required a low-level security clearance. Given these options, Plaintiff, on advice from counsel, decided to accept the disposition that was offered by the City of Ferguson.

**Policing in St. Louis County and in Ferguson**

18. St. Louis County, Missouri is a body politic with approximately one million residents. Approximately 30 percent of St. Louis County is unincorporated and is under the law enforcement jurisdiction of the St. Louis County Police Department.

19. The remaining 70 percent of St. Louis County is divided into 89 separate incorporated cities and villages. Some of these cities in St. Louis County are relatively large containing between 25,000 - 50,000 residents; however, a number of the villages in St. Louis County contain only a few hundred people. The majority of these cities and

villages in St. Louis County maintain their own police force and their own municipal court division. Those that do not have their own police force contract with either the St. Louis County Police Department or another nearby municipality to provide their police service.

20. The St. Louis County Police Department, and most of the municipal police departments located in St. Louis County, aspire to be highly professional agencies that do an excellent job of striking a delicate balance between aggressive law enforcement and adherence to the Constitutional rights of citizens.

21. The police department in University City, which is the community where plaintiff Lindell Boyd resides, is one such professionally run agency. University City is a diverse community with approximately 40 percent of its residents being African-American. Its police department reflects that diversity with approximately 40 percent of University City's police officers being African-American, as is the Chief of Police. The University City Police Department is highly professional, rarely drawing citizen complaints for excessive force or other forms of misconduct.

22. The City of Ferguson ("the City") is located in North St. Louis County and has approximately 21,000 residents, ranking as one of the larger municipalities in St. Louis County. Until the early 1990s, Ferguson was a predominantly white community, but a dramatic demographic shift began to occur resulting in the City's black population growing to 67 percent by 2010.

23. Ferguson maintains its own police department ("the Department" or "FPD") and municipal court, where minor, non-felony cases are filed and adjudicated. Municipal

ordinance violations charges are characterized as quasi-criminal/quasi-civil matters under Missouri law and do not rise to the level of being misdemeanors.

24. In the wake of the shooting of Michael Brown, Jr., the United States Department of Justice, Special Litigation section of the Civil Rights Division, investigated the City of Ferguson and the FPD. The DOJ issued a report, "Investigation of the Ferguson Police Department," on March 4, 2015.

25. The report details multiple policies, practices and customs that are constitutionally infirm or arguably so. Plaintiff attaches to this Complaint the full report, marked as Exhibit A and incorporated by this reference.

26. Among the findings by the DOJ that are particularly germane to this cause are the practices of the FPD that burden the African-American community and the aggressive enforcement practices of the FPD that are intended to generate revenue for the City through the Ferguson Municipal Court.

27. Plaintiff's experience with officers of the FPD and the municipal court is a paradigmatic example of the practices of the FPD. An officer or officers aggressively approach an African-American, make unlawful demands or give commands and when questioned or challenged – as is the right of the citizen -- the officer(s) escalate the confrontation with more unlawful commands and/or the use of physical force and custodial arrest.

28. The unlawful and unconstitutional conduct of the officers of the FPD could not continue to exist without the direction and support of the command structure, including the City administration or without the support of the municipal judge.

29. The municipal judge is sworn to uphold the constitution and laws of the United States

and of the state of Missouri, but, in fact, has operated as a key component of the unlawful practices of the officers of the FPD and the City, on the street and in the court. Rather than be an impartial arbiter of justice, the municipal judge has been a link in the chain of unconstitutional treatment of the persons who have appeared before him.

30. The City hired and retained the municipal judge, even when his actions were the subject of criticism, because the judge did exactly what the City intended him to do, which is generate revenue for the City through his handling of the cases before him.

## COUNT I

### USE OF EXCESSIVE FORCE IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS TO UNITED STATES CONSTITUTION, COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT'S DAVIS AND O'BRIEN

For his cause of action against Defendants Davis and O'Brien in Count I, Plaintiff Boyd states:

31. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 30 of this Complaint as though fully set forth herein.

32. The conduct of Defendants Davis and O'Brien, who were acting alone and together and in concert, in touching, tasing, beating and restraining Plaintiff constituted unreasonable force and violated Plaintiff's rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

33. Defendants Davis and O'Brien each failed to intervene to prevent the use of excessive force against Plaintiff by the other when each of them had a realistic opportunity to do so.

34. As a direct and proximate result of the conduct of Defendants Davis and O'Brien, Plaintiff suffered injuries and damages, including but not limited to: injuries to his body;

great fear for his safety; pain of the mind as well as the body; fear, apprehension, depression and consternation.

35. The acts of Defendant Davis were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Plaintiff, thus entitling Plaintiff to an award of punitive damages against Defendant Davis.

36. The acts of Defendant O'Brien were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Plaintiff, thus entitling Plaintiff to an award of punitive damages against Defendant O'Brien.

37. If Plaintiff Boyd prevails, he is entitled to recover attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendants Davis and O'Brien for actual, consequential, incidental, and compensatory damages in an amount that is fair and reasonable, for punitive damages, for attorney's fees and the costs of litigation, and for such additional relief as the Court deems just and proper.

### COUNT II

### UNLAWFUL SEIZURE IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS TO UNITED STATES CONSTITUTION, COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANTS DAVIS AND O'BRIEN

For his cause of action against Defendants Davis and O'Brien in Count II, Plaintiff Boyd states:

38. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 30 of this Complaint as though fully set forth herein.

39. The conduct of Defendants Davis and O'Brien, who were acting alone, and together and

in concert, in seizing Plaintiff and, thereafter, incarcerating him, charging him, supporting the charges by writing an Incident Report and standing ready to testify to the substance of what they wrote, was unreasonable. The actions of Defendants and each of them, therefore, violated Plaintiff's rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

40. The seizure of Plaintiff was unconstitutional for the following reasons:
    a. The ordinance under which Plaintiff was charged was unconstitutional on its face, and/or,
    b. The ordinance under which Plaintiff was charged was unconstitutional as applied to Plaintiff, and/or,
    c. Plaintiff committed no act or failure to act that constituted an offense under local ordinance, state law or federal law, and/or,
    d. Neither Defendant officer had probable cause to believe that Plaintiff committed any violation of local ordinance, state law or federal law, and/or,
    e. Neither Defendant officer had an articulable and reasonable suspicion of criminal activity afoot and/or,
    f. The actions of one or both Defendant officers was purposefully, racially discriminatory, and/or,
    g. The actions of one or both Defendant officers was retaliatory for Plaintiff's exercise of constitutional rights.

41. Defendants Davis and O'Brien each failed to intervene to prevent the unlawful seizure of Plaintiff by the other when each of them had a realistic opportunity to do so.

42. As a direct and proximate result of the conduct of Defendants Davis and O'Brien, Plaintiff suffered injuries and damages, including but not limited to: injuries to his body; great fear for his safety; pain of the mind as well as the body; fear, apprehension, depression and consternation; and attorney fees.

43. The acts of Defendant Davis were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Plaintiff, thus entitling Plaintiff to an award of punitive damages against Defendant Davis.

44. The acts of Defendant O'Brien were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Plaintiff, thus entitling Plaintiff to an award of punitive damages against Defendant O'Brien.

45. If Plaintiff Boyd prevails, he is entitled to recover attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendants Davis and O'Brien for actual, consequential, incidental, and compensatory damages in an amount that is fair and reasonable, for punitive damages, for attorney's fees and the costs of litigation, and for such additional relief as the Court deems just and proper.

## COUNT III

### VIOLATION OF THE FOURTEENTH AMENDMENT TO UNITED STATES CONSTITUTION – EQUAL PROTECTION -- COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT'S DAVIS AND O'BRIEN

For his cause of action against Defendants Davis and O'Brien in Count III, Plaintiff Boyd states:

46. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 45 of

this Complaint as though fully set forth herein.

47. The conduct of Defendants Davis and O'Brien, who were acting alone and together and in concert, in touching, tasing, beating, restraining and, seizing the person of Plaintiff and, thereafter, incarcerating him, charging him and supporting the charges by writing an Incident Report and standing ready to testify to the substance of what they wrote, violated the Fourteenth Amendment to the United States Constitution Equal Protection Cause in that the Defendant's and each of them had the purpose to discriminate against Plaintiff because of his race – African-American.

48. Defendants Davis and O'Brien each failed to intervene to prevent the violation of the Fourteenth Amendment Equal Protection Clause against Plaintiff by the other when each of them had a realistic opportunity to do so.

49. As a direct and proximate result of the conduct of Defendants Davis and O'Brien, Plaintiff suffered injuries and damages, including but not limited to: injuries to his body; great fear for his safety; pain of the mind as well as the body; fear, apprehension, depression and consternation.

50. The acts of Defendant Davis were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Plaintiff, thus entitling Plaintiff to an award of punitive damages against Defendant Davis.

51. The acts of Defendant O'Brien were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Plaintiff, thus entitling Plaintiff to an award of punitive damages against Defendant O'Brien.

52. If Plaintiff Boyd prevails, he is entitled to recover attorney's fees pursuant to 42 U.S.C. §

1988.

WHEREFORE, Plaintiff prays for judgment against Defendants Davis and O'Brien for actual, consequential, incidental, and compensatory damages in an amount that is fair and reasonable, for punitive damages, for attorney's fees and the costs of litigation, and for such additional relief as the Court deems just and proper.

## COUNT IV

### VIOLATION OF THE FIRST AMENDMENT TO UNITED STATES CONSTITUTION COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT'S DAVIS AND O'BRIEN

For his cause of action against Defendants Davis and O'Brien in Count IV Plaintiff Boyd states:

53. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 45 of this Complaint as though fully set forth herein.

54. The conduct of Defendants Davis and O'Brien, who were acting alone and together and in concert, in touching, tasing, beating, restraining and, seizing the person of Plaintiff and, thereafter, incarcerating him, charging him, supporting the charges by writing an Incident Report and standing ready to testify to the substance of what they wrote, violated the First Amendment to the United States Constitution in that the Defendants and each of them acted in retaliation for Plaintiff's questioning and challenge of the officers' actions.

55. Defendants Davis and O'Brien each failed to intervene to prevent the violation of the First Amendment against Plaintiff by the other when each of them had a realistic opportunity to do so.

56. As a direct and proximate result of the conduct of Defendants Davis and O'Brien,

Plaintiff suffered injuries and damages, including but not limited to: injuries to his body; great fear for his safety; pain of the mind as well as the body; fear, apprehension, depression and consternation, and attorney fees.

57. The acts of Defendant Davis were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Plaintiff, thus entitling Plaintiff to an award of punitive damages against Defendant Davis.

58. The acts of Defendant O'Brien were intentional, wanton, malicious, oppressive, reckless, and/or callously indifferent to the rights of Plaintiff, thus entitling Plaintiff to an award of punitive damages against Defendant O'Brien.

59. If Plaintiff Boyd prevails, he is entitled to recover attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendants Davis and O'Brien for actual, consequential, incidental, and compensatory damages in an amount that is fair and reasonable, for punitive damages, for attorney's fees and the costs of litigation, and for such additional relief as the Court deems just and proper.

### COUNT V

### LIABILITY OF DEFENDANT CITY OF FERGUSON FOR CAUSING THE CONSTITUTIONAL VIOLATIONS SUFFERED BY PLAINTIFF COGNIZABLE PURSUANT TO 42 U.S.C. § 1983

For his cause of action in Count V, against the City of Ferguson, Plaintiff Boyd states:

60. Plaintiff incorporates by reference as if fully set forth herein, each and every allegation of paragraphs 1 through 59.

61. Defendant City of Ferguson caused the constitutional violations, injuries and damages

Case: 4:15-cv-01043 Doc. #: 1 Filed: 07/02/15 Page: 15 of 18 PageID #: 15

suffered by Plaintiff.

62. Defendant City of Ferguson had a policy or a custom and usage by which its police officers:

    a. used unreasonable force against people the officers encountered,

    b. unreasonably seized by detention and arrest people the officers encountered,

    c. instigated and supported the prosecution of people the officers encountered under circumstances in which there was no probable cause to detain or arrest and/or in an effort to conceal and cover misconduct on the part to the officers,

    d. engaged in retaliatory conduct – the use of force, arrest, detention, issuing charges, supporting the charges with a false report and thereafter testifying to the falsehood or being prepared to -- when a person whom they encounter questions or challenges the police,

    e. engaged in racial discrimination against members of the African-American community.

63. Defendant City of Ferguson failed in its duty to train, supervise and discipline officers regarding the use of unreasonable force and regarding:

    a. the constitutional limits on the use of force, arrest, and detention,

    b. probable cause,

    c. issuing criminal charges, and

    d. the protections of the First, Fourth and Fourteenth Amendments to the United States Constitution.

64. Defendant City of Ferguson has acted, and failed to act, with deliberate indifference to

15

the rights of individuals who encounter the police in its failure to train, supervise and discipline and/or in its policy or custom and usage of unreasonably seizing people.

65. The data and evidence that supports this Count against the City of Ferguson is within the possession and the exclusive control of the City of Ferguson, including but not limited to the records of complaints and investigations against police officers that allege misconduct, internal memoranda and communications, statistics revealed by the complaint and discipline records, the identity of potential witnesses who have had encounters with the police, including those who have had encounters with Defendants Davis and O'Brien and/or, the records of individual police officers, including Defendants Davis and O'Brien that reveal their patterns for using force, making arrests and preferring charges and other records and things that reveal the policies and customs and usages of the City of Ferguson.

66. As a direct and proximate result of the conduct, actions, and inactions by the City of Ferguson, Plaintiff suffered physical injuries, some of which resolved and some of which continue to affect Plaintiff.

67. As a direct and proximate result of the conduct, actions, and inactions by the City of Ferguson, Plaintiff suffered emotional distress and mental suffering at having been grabbed, battered, arrested, jailed and prosecuted, some of which continues to affect Plaintiff, along with attorney fees.

68. As a direct and proximate result of the conduct, actions, and inactions by the City of Ferguson, Plaintiff incurred attorney fees.

69. If Plaintiff prevails, he is entitled to recover attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant City of Ferguson for actual, consequential, incidental, and compensatory damages in an amount that is fair and reasonable, for attorney's fees and the costs of litigation, and for such additional relief as the Court deems just and proper.

## COUNT VI

### *RESPONDEAT SUPERIOR* LIABILITY OF DEFENDANT CITY OF FERGUSON

For his cause of action in Count VI against the City of Ferguson, Plaintiff Boyd states:

70. Plaintiff incorporates by this reference the allegations in paragraphs 1 through 59 as though fully set forth herein.

71. Defendant City of Ferguson is directly liable for the constitutional violations that Plaintiff Boyd suffered as the City of Ferguson, Missouri hired and retained Defendants Davis and O'Brien Baird, who, acting within the course and scope of their employment, power and authority, violated the constitutional rights of Mr. Boyd under the Fourth and Fourteenth Amendment to the United States Constitution.

72. Plaintiff acknowledges that *respondeat superior* liability is not a basis for liability of Defendant City of Ferguson, under existing law.  Plaintiff submits that there exists a good faith argument for the modification of that rule based on the dissenting opinion of Justice Breyer in *Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 117 S. Ct. 1382 (1997), the dissenting opinion of Justice Stevens in *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985), and based upon the literature addressing this issue.

73. As a direct and proximate result and cause of the conduct of the employees, agents and

servants of Defendant City of Ferguson, acting within the course and scope their employment, Plaintiff suffered injuries and damages.

74. If Plaintiff prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant City of Ferguson, for compensatory damages, and for attorneys' fees and the costs of this litigation, and for other relief as is appropriate under the law.

Respectfully submitted,
July 2, 2015

Stephen M. Ryals   MO34149
THE RYALS LAW FIRM, P.C.
P.O. Box 11065
Ferguson, Missouri  63135
(314) 862-6262 *phone*
(314) 526-0061 *facsimile*
ryals@rblawstl.com  *email*


*/s/ Al W. Johnson*
Al W. Johnson  MO31485
NEW COVENANT LEGAL SERVICES
1142 Hodiamont Avenue
St. Louis, Missouri  63112
(314) 726-6489
awj@awj-law.com *email*

Attorneys for Plaintiff